# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STANLEY R. WIERCINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRESCIA PROPERTIES, LLC, | ) | C.A. No. N11C-12-015 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

*Upon Defendant Brescia Properties Motion to Exclude the Testimony of J. Frank Peter M.S. Based on his Supplemental Report*: **GRANTED**.

Date Submitted: October 13, 2014
Date Decided: January 15, 2015

Donald L. Gouge, Jr., Esquire, Donald L. Jr. LLC, 800 N. King Street, #303, Wilmington, DE 19801, Attorney for Plaintiff.

Arthur D Kuhl, Esquire (argued), Reger Rizzo & Darnall LLP, 1523 Concord Pike, Suite 200, Brandywine Plaza East, Wilmington, DE 19803, Cheryl Ann Ward, Esquire, Franklin & Prokopik, 300 Delaware Avenue, Suite 1210, Wilmington, DE 19801, Attorneys for Defendant.

## I. INTRODUCTION

Before the Court is Defendant's Motion to Exclude the Testimony of J. Frank Peter M.S ("Peter"). The lawsuit giving rise to this motion relates to whether the seller of a residential property properly disclosed water intrusion and damage to the Plaintiff. Defendant Brescia Properties, LLC ("Brescia") argues that Peter's opinions regarding whether there was water intrusion and damage at the time Brescia owned and sold the property cannot withstand the *Daubert* standard for admissibility of expert testimony.

## II. FACTS

On July 16, 2007, Brescia purchased a residential property ("the Property"), with the intention of "fixing it up" to flip and sell it.[1] On December 14, 2007, Plaintiff Stanley R. Wiercinski ("Plaintiff") and Brescia entered into a standard form Agreement of Sale ("Sales Agreement").[2] As part of the Sales Agreement, Brescia executed a Sellers' Disclosure.

Plaintiff alleges that the real estate listing for the Property prepared by Brescia's agent stated that the Property was "just like new," "totally renovated," and that a new roof was installed in 2007.[3]

---

[1] Compl. ¶ 3 (Trans. ID. 41161944).
[2] *Id.* at ¶ 5.
[3] *Id.* at ¶ 7.

After experiencing a series of water leaks, Plaintiff filed a Complaint on December 1, 2011, asserting claims of breach of contract, fraud and misrepresentation, negligent misrepresentation, and breach covenant of good faith and fair dealing.[4] Plaintiff alleges that he relied on Brescia's representations and the Sellers' Disclosure and Brescia failed to disclose known past and present water leakage.[5] According to Plaintiff, he "discovered many instances where 'renovations and rehabilitation' took place and covered up much more extensive water problems with the Property."[6]

At trial, Plaintiff intends to rely on Peter's testimony to establish the damage and cause of the wood rot, and that the wood rot was present when Brescia renovated and sold the Property to Plaintiff.[7] Peter, who has a chemical engineering degree and a masters of science in chemical engineering,[8] works for Cogent Building Diagnostics conducting building failure forensics, repair scope development, construction review and expert witness services.[9] Peter has opined that "[t]he appearance of wood rot in multiple balcony areas, door framing and

---

[4] *See* Compl. (Trans. ID. 41161944).
[5] *Id.* ¶¶ 8, 17.
[6] *Id.* ¶¶ 14–16.
[7] Motion Exclude Testimony J. Frank Peter Ex. A, at 3–4 ("Mot. Exclude") (Trans. ID. 55010328).
[8] Plaintiff's Response in Opposition to Defendant's Motion to Exclude the Testimony of J. Frank Peter Ex. 1, at 2 ("Pl.'s Opp. Mot. Exclude") (Trans. ID. 55252339).
[9] *Id.*

window frames at the [Property] supports the opinion that these areas of water damage existed prior to the purchase of the townhouse by [Plaintiff]."[10]

### III. PARTIES' CONTENTIONS

Brescia argues that Peter's testimony cannot withstand a *Daubert* challenge because Peter's theory for dating wood rot is neither subject to scientific testing nor based on reliable scientific principles.[11] According to Brescia, Peter fails to provide any scientific parameters underlying his theory of dating wood rot and admits in his supplemental report that there are no publications that support his opinion in this regard.[12] Although Peter asserts that "[i]t is common knowledge in the industry that the rate of water damage depends on a combination of factors that include what fungi are involved, the material that is being damaged, the water exposure history, the temperature history, sun exposure and air movement,"[13] Peter fails to identify what fungi he observed, the material that was damaged, the water exposure history, the temperature history, [the] sun exposure, and [the] air movement.[14]

In response, Plaintiff contends that Peter has 40 years of consulting experience in engineering and has conducted hundreds of home inspections,

---

[10] Mot. Exclude Ex. A, at 4 (Trans. ID. 55010328).
[11] Mot. Exclude ¶ 7.
[12] *Id.* ¶¶ 4–7.
[13] *Id.* ¶ 4.
[14] *Id.* ¶¶ 5–6.

including some with water intrusion issues.[15] Plaintiff asserts that due to Peter's background and training, he can opine with a reasonable degree of probability in his field that that the wood rot in question existed in 2007 when Brescia sold the Property to Plaintiff.[16] According to Plaintiff, Peter's testimony will assist the trier of fact to understand and determine what Brescia knew about the water damage and when he knew it.

## IV. DISCUSSION

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and Delaware Rule of Evidence 702. The Delaware Supreme Court has adopted the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[17] which requires the trial judge to act as a gatekeeper and determine whether the expert testimony is relevant and reliable and whether it will assist the trier of fact.[18] "To help determine whether an expert's principles and methodology are rooted in science and derived from the scientific method,"[19] *Daubert* identifies several factors that may be useful to a trial judge acting as the gatekeeper:

(1) whether a theory or technique has been tested;

(2) whether it has been subjected to peer review and publication;

---

[15] Pl.'s Opp. Mot. Exclude ¶ 6.
[16] *Id.* ¶ 7.
[17] 509 U.S. 579 (1993).
[18] *Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 794–95 (Del. 2006).
[19] *Id.* at 794.

(3) whether a technique had a high known or potential rate of error and whether there are standards controlling its operation; and

(4) whether the theory or technique enjoys general acceptance within a relevant scientific community.[20]

In addition to the *Daubert* criteria, Delaware Rule of Evidence 702 "imposes a special obligation upon the trial judge to 'ensure that any and all scientific testimony . . . is not only relevant but reliable.'"[21] In determining whether an expert opinion is admissible, the Court must consider whether: (1) the witness is qualified as an expert by knowledge, skill experience, training or education; (2) the evidence is relevant; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[22]

Peter does not dispute the lack of published scientific methods used to estimate the age of mold or wood rot. Peter's supplemental report states that:

> Published information that establishes the specific time period of mold growth and wood rot is not available. The science of these destruction processes is understood, but the rate of destruction is so heavily dependent on a matrix of parameters that formulas or standards are not available."[23]

---

[20] *Id.* (citing *Daubert*, 590 U.S. at 590–94).
[21] *Id.* (quoting D.R.E. 702).
[22] *Id.* at 795.
[23] *Id.*

Based on a review of photographs taken by Brescia in 2007 and Plaintiff in 2011, Peter opines that the darkened surface staining of the wood and presence of wood rot fungi establishes that the wood rot was caused by water damage and was present in 2007.[24] Peter bases this opinion on the presence and characteristics of wood rot fungi.[25] According to Peter, the presence of brown rot fungus indicates a chronically wet area for a prolonged period of time because "wood rot is recognized as a slow process that takes many months to years to occur" and the damage progresses deep into the wood.[26] Because he has never observed wood rot less than five years old, Peter opines that the water damage at the Property must have been present in 2007 when Brescia renovated.

The Court will not accept Peter's opinion simply because he says so. This is the sort of *ipse dixit* reasoning insufficient to pass muster under *Daubert*.[27] Peter's theory of dating wood rot is based solely on his work experience, and his methodology is not supported by any scientific data. "[A]n expert's . . . qualifications alone will not serve as a license to express *ipse dixit* rather than [a] properly supported expert opinion."[28] Accordingly, because Peter's opinion is not

---

[24] Mot. Exclude Ex. A, at 2–4 (Trans. ID. 55010328).

[25] *Id.* at 2–3.

[26] *Id.* at 2.

[27] *Costalas v. Safeway, Inc.*, 2007 WL 2893585, at *1 (Del. Super. Oct. 1, 2007); *Crowhorn v. Boyle*, 793 A.2d 422, 433 (Del. Super. 2002); *Brown v. United Water Delaware, Inc.*, 2011 WL 4716251, at *3 (Del. Super. Oct. 7, 2011) *aff'd,* 74 A.3d 653 (Del. 2013).

[28] *Jones v. Astrazeneca, LP*, 2010 WL 1267114, at *9 (Del. Super. Mar. 31, 2010).

based on sufficient facts or data and is not the product of reliable methods, it fails to meet *Daubert*.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude the Testimony of J. Frank Peter M.S. Based on his Supplemental Report is **GRANTED.**

**IT IS SO ORDERED.**

_____
Jan R. Jurden, President Judge